IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BRYAN M. TARTER,<br><br>             Plaintiff,<br><br>vs.<br><br>THRONE LAW OFFICE, P.C. and<br>JACOB T. HASEMAN,<br><br>             Defendants. | CV 17-123-BLG-SPW<br><br>ORDER |

Before the Court is Plaintiff Bryan Tarter's Motion to Exclude S. Thomas Throne as a "Hybrid" Liability Expert. (Doc. 25). Tarter argues that Throne is not a true "hybrid" fact-expert and Defendants failed to comply with Rule 26(a)(2)(B), so Throne's testimony should be excluded. Defendants argue that Tarter's motion is untimely, it is unsupported by Fed. R. Civ. Pro. 26, and misrepresents Throne's knowledge of the case. For the reasons set forth below, the Court grants Tarter's motion in part and denies the motion in part.

I. **Relevant Background**

Under the Court's amended scheduling order, the parties simultaneously disclosed their liability experts by the Court's deadline of September 28, 2018. (Doc. 26-1). Defendants disclosed two witnesses who may provide "hybrid" expert testimony. (Doc. 26-1). The defense witness at issue in this motion is S.

1

Thomas Throne. Defendants' disclosure states that Throne may provide opinion testimony regarding whether Haseman's representation of Tarter met the standard of care. (Doc. 26-1 at 2). He may also opine, based on his experience in understanding energy companies' financial viability, that Arch's 2016 bankruptcy was unforeseeable because the company appeared to be financially sound in 2011. (*Id.*). Finally, Throne may opine, based on Haseman's notes, billing records, and other case file documents, that Haseman thoroughly discussed every aspect of the land-sale transaction with Tarter, and that every critical aspect of the transaction was discussed with, explained to, and understood by Tarter. (*Id.* at 3).

Throne is the founder and managing partner of the Throne Law Firm. (Doc. 29 at ¶ 2). He was deposed as a fact witness in this case on January 24, 2018. Throne has practiced law in Wyoming for 35 years, primarily in the energy and natural resources field. (Doc. 26-1 at 2). As the managing partner, Throne testified that he is, to some degree, aware of and involved in, all firm projects. (Doc. 28-1 at 41:6-42:1).

With respect to the Tarter land-sale transaction with Arch Coal in 2010-2011, Throne testified that he "generally remember[ed] the transaction." (*Id.* at 12:25-:13-2). Throne testified that he recalled "having periodic conversations with [Haseman] about the transaction," but could not remember specifics. (*Id.* at 12:25-13:6). Haseman testified that although Throne was not personally involved in the

2

negotiations with Arch, "[Throne] was definitely aware of what was going on and how the deal was structured and how it looked because we discussed that." (Doc. 28-2 at 199:19-23).

Throne testified that his role with Haseman in the Arch land-transaction was to "coach, as needed," but that his coaching was not needed. (Doc. 26-4 at 16:21-17:2). Throne has no recollection of any general discussions with Haseman about the transaction, did not review any of the draft or final sale documents that Tarter ultimately signed, did not participate in any phone calls between Haseman and Tarter regarding the transaction, and was not present for any of the meetings between Haseman and Tarter. (Doc. 26-4 at 14:21-22:14). Throne was not involved in the June 21, 2011 meeting with Haseman, Tarter and Arch Coal's land representatives when the Sale and Purchase Agreement was finalized. (*Id.* at 13:2-9). Throne's only recollection is that the meeting happened. (*Id.* at 15:10-13).

Based on Throne's deposition testimony, Tarter argues that Throne's opinions must be excluded because Throne had little to no involvement representing Tarter in 2011. As a result, Tarter argues that Throne's opinions are not based on Throne's personal knowledge or observations, nor were they developed while representing Tarter. Tarter asserts that Throne's opinions are instead second-hand evaluations of the evidence in anticipation of trial, qualifying

3

him as a retained expert. Because Defendants did not disclose Throne as a retained expert, Tarter argues Throne's opinions must be excluded altogether.

Defendants argue that the court should deny Tarter's motion because it is untimely, it is unsupported by Fed. R. Civ. Pro. 26, and it misrepresents Throne's knowledge of the case.

## II. Legal Standard

Rule 26 of the Federal Rules of Civil Procedure requires parties to disclose the identity of any expert witness. If the expert is "one retained or specially employed to provide expert testimony in the case or whose duties as the party's employee regularly involve giving expert testimony," the disclosure must be accompanied by a written report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

## III. Analysis

### A. Tarter's motion is timely

Defendants argue that the Court should reject Tarter's motion as untimely because it is an objection to the sufficiency of a Rule 26(a)(2)(B) report which was due within 14 days of the report's disclosure according to the scheduling order. Tarter argues his motion is timely because it is an objection to the admissibility of Throne's testimony, not an objection to the sufficiency of a Rule 26(a)(2)(B) report. The Court agrees.

Defendants did not file a Rule 26(a)(2)(B) report. In fact, their argument is that a Rule 26(a)(2)(B) report is not required for Throne. As a result, Tarter's motion cannot be an objection to a report that doesn't exist.

### B. Throne's Disclosure Does Not Comply with Rule 26(A)(2)(B)

#### 1. Rule 26(a)(2)(B) v. Rule 26(A)(2)(C)

The Federal Rules contemplate two different classes of experts: those retained or specifically employed to give expert testimony in a case, and witnesses who are not retained or specially employed but, nevertheless, may provide expert testimony. Experts who are "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involved giving expert testimony" must prepare a report that contains, among other things, "a complete statement of all opinions the witness will express and the basis

5

and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). In 2010, Rule 26(a)(2)(C) was added to resolve tension about when an expert report is required. Subsection C requires certain disclosures regarding an expert witness who is not required to provide a written report. Specifically, if a witness is not required to submit a written report under (B), the disclosure "must state: (i) the subject matter on which expert is expected to present evidence []; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Defendants argue that some federal courts have interpreted the Advisory Committee Notes to Rule 26(a)(2)(C) to require a written report from employee experts only when those employees "regularly testify." *See Navajo Nation v. Norris*, 189 F.R.D. 610 (E.D. Wash. 1999). "Given the plain language of this specific category, by implication, those employees who do not regularly testify for the employer but are doing so in a particular case need not provide a report." *Navajo Nation*, 189 F.R.D. at 612. The Advisory Notes specifically state:

> A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony . . . . Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony. Parties must identify such witnesses . . . and provide the disclosure under Rule 26(a)(2)(C).

Advisory Comm. Notes to Rule 26(a)(2)(C).

Defendants argue that a subsection (C) report was an appropriate disclosure because Throne has not been retained or specifically employed to provide expert testimony, is not a professional expert regarding the topics in the case, is not being paid to testify, and does not regularly give expert testimony. Even so, however, Throne "do[es] not have carte blanch to testify at will. . . . As a hybrid/expert witness[], [he] must testify from the personal knowledge [he] gained from the job." *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 371 (7th Cir. 2017). Courts have repeatedly found that witnesses who are otherwise exempt from subsection (B)'s report requirement, *e.g.* treating physicians and party employees, are not exempt to the extent their opinions exceed their percipient knowledge or were formed for the purposes of litigation. *See Goodman v. Staples The Office Superstore, LLC,* 664 F.3d 817 (9th Cir. 2011).

In *Goodman,* the Ninth Circuit discussed, as a matter of first impression, the issue of when a treating physician is transformed into an expert offering testimony on matters beyond the treatment rendered for purposes of Rule 26 disclosures. *Goodman,* 644 F.3d at 824. The court defined a treating physician as one who is not retained or specially employed to provide expert testimony. The plaintiff in *Goodman* asserted that her treating physicians were exempt from subsection (B)'s report requirement even though their opinions went beyond their treatment of her. The court noted that in order to form their opinions, the doctors reviewed

information Goodman's attorney provided them that the doctors hadn't reviewed during their course of treatment. *Id.* at 824. The Ninth Circuit joined those circuits that have addressed the issue and held a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent his or her opinions were formed during the course of treatment. *Id.* at 826.

"Applying the Ninth Circuit's reasoning in *Goodman*, courts considering whether expert witnesses . . . are 'non-retained' or 'retained' have found the nature of the expert's testimony particularly important: when an expert is to offer testimony limited to his or her percipient knowledge i.e. knowledge and opinions formed at the time an earlier evaluation or report was made, the expert is treated as a non-retained expert; where, as in *Goodman*, the witness's testimony relies on information beyond his or her percipient knowledge, the witness is treated as a retained expert." *Cantu v. United States*, 2015 WL 12743881 at *4 (C.D. Cal Apr. 6, 2015). Accordingly, courts have limited the exemption from Rule 26(a)(2)(B) to the expert's percipient opinions.

For example, in *United States v. Sierra Pacific Industries,* 2011 WL 2119078 (E.D. Cal. May 26, 2011), the court found that two fire investigators who were present at a fire on the day it started, investigated it as part of their employment, and issued a report at the time, were not subsection (B) experts because they would "not offer any opinions that were formed after they drafted

8

their report summarizing their percipient investigation." *Id.* at *5. Specifically, the court explained, "The distinguishing characteristic between expert opinions that require a report and those that do not is whether the opinion is based on information the expert witness acquired through percipient observations or whether, as in the case of retained experts, the opinion is based on information provided by others or in a manner other than by being a percipient witness to the events in issue." *Id.* at *4.

Similarly, in *Trulove v. D'Amico,*, the court excluded plaintiff's unretained expert because the expert lacked "any personal knowledge about the events giving rise to the litigation, but were only given information later and asked to form opinions solely for the purposes of litigation." 2018 WL 1090248, at *3 (N.D. Cal. Feb. 27, 2018). Conversely, in *Cars 4 Causes v. Works of Life International Ministries, Inc.*, 2014 WL 12740310, *5 (C.D. Cal. Mar. 7, 2014), the court applied *Goodman* and found that plaintiff's marketing expert was exempt from subsection (B)'s reporting requirement because there was no indication that the expert's opinion was "not premised on personal knowledge and observations made in the course of his provision of services to [p]laintiff[;]" rather, his opinions were "formed on facts learned or observations made in the course of business interactions with Plaintiff."

Other circuits have come to the same conclusion. In *Downey v. Bob's Disc. Furniture*, 633 F.3d 1 (1st Cir. 2011), interpreting the words "retained or specially employed," the court concluded that as long as the expert was not retained or specially employed in connection with the litigation, and his opinion about causation was premised on personal knowledge and observations made in the course of treatment, no report is required under the terms of Rule 26(a)(2)(B). *Downey*, 633 F.3d at 7. "While we acknowledge that the difference between an opinion formulated by an on-the-scene expert during treatment (e.g. by a treating physician) and one formulated by an expert hired in anticipation of testimony does not leap off the page, a close reading of the text of Rule 26(a)(2)(B) convinces us that this is the precise distinction that the drafters had in mind." *Id.*; *see also Indianapolis Airport Auth.*, 849 F.3d at 371.

### 2. Throne's disclosed opinions exceed his percipient knowledge and are subject to Rule 26(a)(2)(B)'s Report Requirement.

Throne intends to testify on a number of topics outside his personal knowledge obtained while working at Throne Law Office during the Section 12 sale. *See Downey*, 633 F.3d at 7. The opinions in Throne's disclosure – that Haseman's representation of Tarter met the standard of care, that Arch's bankruptcy was unforeseeable, that Haseman discussed every aspect of the land-sale transaction with Tarter, that Tarter understood the various components of the

10

transaction and was engaged throughout the process (doc. 26-1 at 2-3) - must be presented as expert opinions, established after the events at issue, because Throne simply does not have percipient knowledge of them.

Throne testified just over a year ago that he has no recollection of any general discussions with Haseman about the transaction, did not review any of the draft or final sale documents that Tarter ultimately signed, did not participate in any phone calls between Haseman and Tarter regarding the transaction, was not present for any of the meetings between Haseman and Tarter, and did not attend the June 21, 2011, meeting with Haseman, Tarter, and Arch Coal's representatives. (Doc. 26-4 at 13:2-9, 14:21-22:14). Because he was not involved with Haseman and Tarter or their communications with each other, he does not have any percipient knowledge of Haseman's conduct or Tarter's conduct or understanding during the land transaction. To that end, Throne's disclosure states that Throne's opinions regarding the standard of care, Haseman's discussions, and Tarter's understanding of the deal stem from "Haseman's notes, billings records, and other case file documents." (See Doc. 26-1 at 3). In other words, Throne formed his opinions after he read the case file.

The same is true with his opinion regarding Arch Coal's bankruptcy potential. By his own admission Throne was not involved in the sale, so does not have any percipient knowledge of Arch's financial situation at that time to support

his opinion on Arch's potential for bankruptcy. Instead, the basis for his opinion is based on "practice[ing] oil and gas related law for thirty-five years . . . [and his] experience in understanding energy companies' financial viability." (doc. 26-1 at 2).

By all indications, Throne's opinions are largely based on work Throne performed after the sale transaction and solely for the purposes of this litigation and not during the ordinary course of his employment. Accordingly, in providing an opinion on any of these facts, Throne "[is] functioning analogously to a physician performing an 'after-the-fact' diagnosis rather than providing 'in-the-moment' or 'on-the-scene' treatment." *Ulbrick v. UPR Prod., Inc.*, 2011 WL 500034 at *4 (E.D. Mich. Feb. 8, 2011) (rejecting mechanic as a subsection (C) witness when his opinions were not formed as a result of witnessing or experiencing the accident that was the subject of the lawsuit, but an "after-the-fact" examination of the car in question). Accordingly, Throne's disclosed opinions are subject to Rule 26(a)(2)(B). *See Goodman,* 644 F.3d at 824. Because Throne's Rule 26(a)(2)(C) disclosure does not include " a complete statement of all opinions the witness will express and the basis and reasons for them," Throne's expert disclosure is insufficient under Rule 26(a)(2)(B).

## C. Remedy For Failure to Comply with Rule 26(a)(2)(B)

"When a party fails to make the disclosures required by Rule 26(a), the party is not allowed to use the witness to supply evidence at trial unless it establishes that the failure was substantially justified or harmless." *Goodman*, 644 F.3d at 826 (citing Fed. R. Civ. P. 37(c)(1)). Rule 37 gives teeth to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Id.* at 827. Generally, the exclusion penalty is "self-executing" and "automatic." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008) (noting Rule 37 (c)(1)'s exclusion sanction provides a strong inducement for disclosure of material and affirming district court's preclusion of undisclosed damages evidence).

Under Rule 37(c)(1), preclusion of evidence is neither mandatory, nor the only sanction the court may consider. Rule 37(c)(1) explicitly provides that in addition to or instead of preclusion, the court may order the following sanctions: (1) the payment of reasonable expenses including attorney's fees caused by the failure; (2) an instruction informing the jury of the party's non-compliance; and (3) any "other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(A)-(C).

The party facing sanction has the burden of showing that any failure to disclose is substantially justified or harmless. *See Yeti by Molly, Ltd. v. Deckers Outdoor Camp*, 259 F.3d 1101, 1106 (9th Cir. 2001). Exclusion of an expert's

13

testimony for failure to comply with the requirements of Rule 26(a) is a sanction available to the district court even in the absence of a showing of bad faith or willfulness. *Id.* at 1106. The following factors are used to determine whether a disclosure is justified or harmless: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 F. App'x, 705, 713 (9th Cir. 2010).

Defendants argue that "in light of the substantial authority supporting [their] interpretation of Throne as a Rule 26(a)(2)(C) witness, a reasonable person could *certainly* conclude that Defendants were justified in disclosing him [under that section]." (Doc. 28 at 25). The Court disagrees. Since *Goodman* was decided in 2011, motions to exclude or strike expert opinions for failure to comply with Rule 26(a)(2)(B) for lack of prescient knowledge have proliferated, as noted in the analysis above. In light of this case law, the Court finds that a reasonable person with access to Westlaw would not *certainly* conclude that Defendants were justified in disclosing Throne under subsection (C). Moreover, Defendants' suggestion that the Court treat Throne as an "employee" to fit his testimony under the plain language of subsection (C)'s advisory notes proves too much. Founding partners of a law firm are as much employees of that law firm as board of directors

14

are of a company. That is, they're not. A founding partner is an owner and an employer, not an employee. The plain language argument is not persuasive.

Nevertheless, the Court agrees with Defendants that their violation of Rule 26(a)(2)(B) did not cause prejudice to Tarter or any unfairness in the trial, because trial has not occurred. Although Defendants did not strictly comply with the requirements of that Rule by the disclosure deadline, Defendants did timely serve a Rule 26(a)(1)(C) report containing information regarding Throne's background and a short statement of the opinions he may provide. Tarter had notice of Throne's opinions and the loose basis for those opinions before the close of discovery. Accordingly, Throne's testimony will not be excluded. His testimony will be abbreviated, however.

Because Throne's disclosure did not comply with Rule 26(a)(2)(B), Throne will be precluded from offering retained expert opinions, or opinions that were formed after the fact of the land sale transaction, exclusively for litigation. Because Throne was disclosed as a hybrid-witness, his testimony will be allowed only to the extent that it comports with the law on hybrid-witnesses. That is, his testimony will be limited to what he witnessed or experienced with Haseman, Tarter and Arch Coal during the land-sale transaction that is the subject of the lawsuit, and not from any information resulting from an "after-the-fact" examination of facts.

15

## IV. Conclusion

For the reasons set forth above, Tarter's motion is GRANTED in part and DENIED in part.

DATED this 12th day of February 2019.

_____
SUSAN P. WATTERS
United States District Judge